UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
JOHN EASTCOTT,                       :
                    Plaintiff,       :
                                     :        11 Civ. 5383 (JSR)
         -v-                         :
                                     :        MEMORANDUM ORDER
HASSELBLAD A/S, HASSELBLAD USA INC., :
and B&H PHOTO & ELECTRONICS CORP.,   :
                                     :
                    Defendants.      :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

    Plaintiff John Eastcott, a professional photographer and

the inventor of U.S. Patent No. 5,592,331 ("the '331 patent"),

brings suit against defendants Hasselblad A/S, Hasselblad USA

Inc, (collectively "Hasselblad") and B & H Photo & Electronics

Corp ("B & H").  Eastcott alleges that Hasselblad's HTS 1.5

adapter (the "HTS 1.5 adapter") infringes three claims of his

patent, which relates to adapters for tilting a lens with

respect to a camera.  The defendants move for summary judgment,

arguing that two of the three claims, claims 1 and 6, were

anticipated by a German patent (the "'496 patent") that was

published 15 years before the '331 patent, and that the third

claim of the '331 patent, claim 26, is invalid for obviousness

in view of another United States patent (the "'963 patent").

Defendants also argue that the HTS 1.5 adapter does not infringe

Claim 26 of the '331 patent.  After full consideration, the

Court grants the defendants' motion for summary judgment and

1

dismisses the complaint.

The '331 patent, titled OPTICAL ADAPTER FOR CONTROLLING THE ANGLE OF THE PLANE OF FOCUS, was filed as U.S. Patent Application No. 08/374,248 on January 18, 1995 and issued on January 7, 1997.  According to the '331 patent, tilting a lens relative to the image plane of a camera can bring objects positioned at different distances from the lens into focus simultaneously.  Declaration of Mark Johnson ("Johnson Decl."), Jan. 17, 2012, Ex. A, U.S. Patent No. 5,592,331 (the "'331 patent,") at 3:51-58.  Such tilting also allows a user to render objects "positioned at the same distance from the lens plane with different degrees of sharpness." Id. For example, "a portrait of a person facing the camera may be recorded with one side of the face sharp and the other mysteriously soft and out of focus." Id.

The three claims of the patent that plaintiff asserts were infringed by defendants are Claims 1, 6, and 26.  The text of those three claims is as follows:

Claim 1:

An adapter for altering the angle of the plane of focus of an optical system, the optical system including (a) an optical instrument having an opening through which an image forming beam can pass, an image plane adapted to receive an image thereon and an optical axis, and (b) an interchangeable lens having an optical axis; the adapter being sandwiched between, and removably connected to, the optical instrument and the interchangeable lens; the adapter having (i) an

adapter body; (ii) a secondary lens mounted within the
adapter body, (iii) a front face coupling means on the
adapter body to removably mount the interchangeable
lens thereto, (iv) a back face coupling means on the
adapter body to removably mount the adapter to the
optical instrument, and (v) tilt means to tilt the
optical axis of the interchangeable lens at a
variable, including non-perpendicular, angle to the
image plane of the optical instrument.

Claim 6:

An adapter as in claim 1 wherein the adapter tilt
means tilts the secondary lens and the interchangeable
lens attached to the front face coupling means of the
adapter body and thereby tilts the optical axis of the
interchangeable lens at an acute angle to the optical
axis of the optical instrument.

Claim 26:

An adapter as in claim 1 wherein the tilt means
includes a mounting ring holding the secondary lens
two pins protruding outwardly from the mounting ring
and a casing member having two slots therein at acute
angles to the optical axis of the optical instrument
and wherein each pin slides within one of the slots.


The allegedly infringing device here is the HTS 1.5

adapter.  This adapter provides both tilt and swing

functionality.[1]  When Hasselblad began to market its HTS 1.5

adapter (including through defendant B & H), it stated that the

adapter was "revolutionary" because it provided creative control

for photographers by allowing them greater ability to control

---

[1] The '331 patent explains that "tilt" typically refers to
rotation about a horizontal axis and "swing" typically refers to
rotation about a vertical axis, but that the terms are used
interchangeably in the '331 patent because a "swing" can become
a "tilt" if the photographer rotates the camera 90 degrees. '331
patent at 3:8-13, 5:31-40.

the plane of focus. Declaration of Douglas C. Wyatt, Jan. 27, 2012 ("Wyatt Decl."), Ex. 15.  After Eastcott learned of Hasselblad's intention to sell the allegedly infringing HTS 1.5 adapter, he immediately wrote to Hasselblad's CEO, Christian Poulsen, to share his belief that the adapter infringed his '331 patent.  See Wyatt Decl. Ex. 11.

Under Federal Rule of Civil Procedure 56(a), a party seeking summary judgment must demonstrate that there is "no genuine dispute as to any material fact" and that the party is "entitled to a judgment as a matter of law." Fed. R. Civ. P.56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[S]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Before turning to the merits of the dispute, the Court must examine the admissibility of the affidavit submitted by Eastcott in support of his opposition to the motion for summary judgment. See Wyatt Decl., Ex. 23, Affidavit of John Eastcott ("Eastcott Aff."). The majority of the affidavit is essentially a combination of a legal brief and an expert report, and Eastcott is not qualified to submit either.  The affidavit includes headings such as "Claim 1 is not Anticipated," and "Claim 26 of '331 Patent is not Obvious Over '496 German Patent in View of

4

the '963 Patent," followed primarily by legal argument and opinions in support of those headings.

The Court will not discuss problems with each of the individual paragraphs of the affidavit at great length, but it is necessary to set forth a few examples of paragraphs from the affidavit to illustrate its content:

- Mr. Poulsen's expert testimony on how it would be obvious for the zoom lens of the '963 patent to be used with the adapter of the German '496 patent is not convincing because he has no background in photography but rather is an engineer with a background in the magnetic field theory and coherent radar receivers.
- The Defendants' HTS 1.5 adapter infringes claims 1,6, and 26 of the patent-insuit.  The Defendants copied Plaintiffs invention claimed in the '331 patent.
- Defendants' Statement concerning the inadequacy of Mr. Eastcott's testimony about infringement are reputed [sic] in detail by issues nos. 1 - 24 in Eastcott's Statement of Material Fact in Opposition to Defendants' Motion. As pointed out in Plaintiff's Objections to Defendants' Statement of Material Fact, the questions by Defendants' attorney are asking for legal conclusions and not statements of fact.
- Claims 1 and 6 of the U.S. 5,592331 ("331") patent are not anticipated by the German Patent DE 28551496 ("496") and claim 26 is not obvious over the '496 patent in view of the U.S. 5,264,963 ("963") patent.
- Claim 26 is not obvious over the German '496 patent in view of the '963 patent for reasons discussed above for the anticipation of claim 1 by the' 496 patent and the fact that it is manifest that the zoom lens of the '963 patent does not make the use of the slots and pins of claim 26 obvious over the '496 German patent.
- The bearing axis 7 of the '963 patent or pivot point cannot move in an arc as with the axis of rotation created with claims 1,6 and 26 of the '331 patent.

> Because the bearing axis 7 of the '496 patent cannot
> move in an arc, it cannot perform the function of
> the axis of rotation outlined in the '331 patent
> which advantageously provides specific benefits.
>
> - The HTS 1.5 adapter provides slots and pins that
>   perform in the [sic] substantially the same way,
>   using substantially the same means with
>   substantially the same result as the slots and pins
>   described in the '331 patent.

Id. ¶¶ 18, 35, 26, 31, 32, 33, 37, 44.

Under the scheduling order set in this case, Eastcott's

affidavit, to the extent it reduces to a proffer of expert

opinion, is untimely.  Even if this were not the case, a

district court abuses its discretion if it "permits a witness to

testify as an expert on the issues of non-infringement or

invalidity unless that witness is qualified as an expert in the

pertinent art,"  Sundance, Inc. v. DeMonte Fabricating Ltd., 550

F.3d 1356, 1363 (Fed. Cir. 2008), and Eastcott has already

testified that he is unable to offer any such expert testimony.

See, e.g., Reply Declaration of Mark C. Johnson, Feb. 2, 2012,

Deposition of John Eastcott, Dec. 20, 2011 ("Eastcott Dep.") at

191:11-193:11, 215:3-216:25, 236:12-237:25; 238:2-239:3; 244:3-

20. In fact, when asked to examine the diagrams of the HTS 1.5

adapter, Eastcott testified at his deposition that, "I do not

comprehend the diagrams as performed here as given to me by

Hasselblad. I cannot comprehend them."  Id. at 245:25-246:1-2.

And when asked, for example, whether he had "formed any opinions

with regard to what element on a Hasselblad HTS device

corresponds to a mounting ring?" he stated that he had formed no such opinion.  Id. at 246:20-247:5.

Furthermore, to the extent that Eastcott's affidavit contains legal argument, it is misplaced, since such argument should be included in the memorandum of law that his counsel submitted.  Therefore, those paragraphs of Eastcott's affidavit that proffer expert opinions or legal arguments about his patent or the allegedly infringing adapter – notably, paragraphs 18-44 of Eastcott's affidavit -- are hereby stricken.[2]

With the evidentiary decks thus cleared, the Court turns next to claim construction.  See Markman v. Westview Instruments, Inc., 517 U.S. 370, 372 (1996).

The only disputed term in Claim 1 is the term "tilt means." The parties agree that the tilt means element of claim 1 is written in means-plus-function form and is thereby subject to paragraph 6 of 35 U.S.C. § 112.  Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 6-7;

---

[2] Although there are also objectionable and inappropriate statements in paragraphs 6-8 and 10-17, a few of the statements within those paragraphs are appropriate, because "[t]he testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems." Voice Technologies Group, Inc. v. VMC Sys., Inc., 164 F.3d 605, 615 (Fed. Cir. 1999). Because the Court does not rely on any of the inadmissible or inappropriate statements in those paragraphs, it is not necessary to parse those paragraphs to separate out the appropriate sentences from the inappropriate sentences.

Defendants' Brief in Support of Motion for Summary Judgment
("Def. Mem.") at 11.  According to paragraph 6 of 35 U.S.C. §
112, when a claim expresses a means "for performing a specified
function," but does not specify a structure, "such claim shall
be construed to cover the corresponding structure, material, or
acts described in the specification and equivalents thereof."

The construction of a "means-plus-function limitation" has
two steps: a court must first "determine the claimed function,"
and second "identify the corresponding structure in the written
description that performs that function." JVW Enterprises, Inc.
v. Interact Accessories, Inc., 424 F.3d 1324, 1330 (Fed. Cir.
2005).  As to the first step, the relevant portion of Claim 1
states that the optical system includes "tilt means to tilt the
optical axis of the interchangeable lens at a variable,
including non-perpendicular, angle to the image plane of the
optical instrument."  The parties agree that the claim language
sets forth the function of the "tilt means," i.e., to "tilt the
optical axis of the interchangeable lens at a variable,
including non-perpendicular, angle to the image plane of the
optical instrument."  Pl. Mem. at 7; Def. Mem. at 11.

The structures that perform the function of tilting the
optical axis of the interchangeable lens are set forth in the
description section of the '331 patent.  According the '331
patent, "FIGS. 1a-3b are side cross-sectional views of three

embodiments showing the adapter of the present invention; and FIGS. 4a-4c are side elevational views of a fourth embodiment showing the adapter of the present invention." '331 Patent at 5:59-63. Defendants argue that the '331 patent therefore describes four embodiments of an adapter, each using different mechanisms to accomplish the tilting function. Specifically, they argue that: Figure 1 includes a pivot mechanism, see id. at 6:25-47; Figure 2 includes a ball and socket mechanism, see id. at 6:48-7:5; Figure 3 includes a sleeve and rod mechanism see id. at 7:6-24; and Figure 4 includes a cam and pin mechanism, see id. at 7:25-8:11.

Plaintiff agrees that the patent discloses the ball and socket, sleeve and rod, and cam and pin mechanisms, but he argues that "[u]nlike the three corresponding structures discussed above which are shown in Figures 2 - 4, no structure is associated with the pivot is associated with [sic] Figure 1." Cf. Pl. Mem. at 9. Plaintiff argues that Figure 1 shows only "a theoretical axis 22," and therefore discloses neither the structure of the pivot nor a specific pivot mechanism. Id. at 17.

The Court finds plaintiff's arguments unpersuasive. The '331 patent consistently refers to _four_ embodiments of the invention, and specifically states that Figures 1a and 1b are an embodiment of the invention, rather than a drawing to

9

"demonstrate the principles of" the invention.  Pl. Mem. at 9.[3]

The patent then states that "[i]n the first embodiment shown in

FIGS. 1a and 1b, a simple pivot is employed along an axis." '331

Patent at 6:25-26.  Moreover, the '331 patent uses the same

reference numerals to indicate the same structural elements

represented in the four different embodiments.  Id. Figs. 1-4.

The question on claim construction is whether a skilled

artisan would "understand the written description itself to

disclose such a structure."  See Telecordia Techs., Inc. v.

Cisco Sys., Inc., 612 F.3d 1365, 1376 (Fed. Cir. 2010) (quoting

Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1338

(Fed. Cir. 2008)).  In Telecordia, the Federal Circuit

concluded that, although figures in the relevant patent depicted

a "controller" only as a "black box" and "nothing in the figures

describe[d] the details of its inner circuitry," the patent

"disclose[d] adequate defining structure to render the bounds of

---

[3] In his affidavit, Eastcott describes his rationale behind the
inclusion of Figure 1. Eastcott says that he provided Figure 1
to show the principles of his invention, and that those
principles were to be understood in view of Figures 2 - 4.
Wyatt Decl. Ex. 23, Affidavit of John Eastcott ("Eastcott Aff.")
¶¶ 20, 21. But this runs contrary to the clear and plain wording
of the patent as discussed above.  Even assuming arguendo that
this portion of the affidavit were admissible, courts are not
required to give "deference to the testimony of the inventor
about the meaning of the claims," especially when that testimony
is not cumulative but instead contradicts the plain wording of
the claims and the other evidence. Hoechst Celanese Corp. v. BP
Chems. Ltd., 78 F.3d 1575, 1580 (Fed. Cir. 1996).

the claim understandable to an ordinary artisan" because "an ordinary artisan would have recognized the controller as an electronic device with a known structure." 612 F.3d at 1377.

Here, an ordinary artisan would have recognized that the term "axis" was a structural element with a known structure. The defendants' expert, Anders Poulsen, declared that, in this context, the term "axis" is "often used by engineers to refer to a structural element, the most common type being a pin capable of rotating in a hole."  Poulsen Reply Decl. at 3; see also Wyatt Decl. Ex. 11, Deposition of Anders Poulsen ("Poulsen Dep."), Jan. 5, 2012, at 197:2-14.  Plaintiff has not provided any expert to contradict the definition provided by defendants' expert, and thus the Court accepts Poulsen's unrebutted definition.[4]  See Creo Products, Inc. v. Presstek, Inc., 305 F.3d 1337, 1347 (Fed. Cir. 2002) (concluding that a structure was disclosed for performing the function of "means for rotating each cylinder," based on expert testimony that spindles are commonly used for rotating plate cylinders in printing presses).

Plaintiff essentially asks the Court to ignore Figure 1 in the patent and the structure that it discloses.  Plaintiff's proposed construction would thus invalidate one of the embodiments of the patent, but "when multiple embodiments in the

_____

[4] The Court finds that plaintiff's arguments about Poulsen's qualifications and ability, see Pl. Mem. at 13, are insufficient to warrant the exclusion or discounting of his expert testimony.

11

specification correspond to the claimed function, proper application [of paragraph 6 of §112] generally [requires a court to read] the claim element to embrace each of those embodiments." Micro Chem., Inc. v. Great Plains Chem. Co., 194 F.3d 1250, 1258-1259 (Fed. Cir. 1999).  Therefore, the Court adopts the definition of tilt means proposed by the defendant, and finds that the "tilt means" include a pivot mechanism, a ball and socket mechanism, a sleeve and rod mechanism, and a cam and pin mechanism.

The Court next turns to the claim construction of Claim 26. As set forth above, Claim 26 states:

> An adapter as in claim 1 wherein the tilt means includes a mounting ring holding the secondary lens two pins protruding outwardly from the mounting ring and a casing member having two slots therein at acute angles to the optical axis of the optical instrument and wherein each pin slides within one of the slots.

Although defendants contend that there are five terms in Claim 26 to construe, only three of those terms are disputed. First, defendants argue that "casing member" should be defined as "a structure that encases the mounting ring," but plaintiff argues that it should be defined as a "structure that encases." Second, defendants argue that "slot" should be defined as "an opening having a generally linear portion," while plaintiff argues that it should be defined as "a narrow opening or groove."  Third, defendants argue that "slots . . . at acute

12

angles to the optical axis of the optical instrument" should be defined as "each of the two slots has a generally linear portion that is oriented such that the linear portion of the slot forms an acute angle with the optical axis of the optical instrument." Plaintiff does not include a full definition in response, but he argues that the definition of this term should not include the "generally linear portion" suggested by the defendants.[5]

The Court need not construe the three disputed terms in Claim 26, however, because -- for the reasons set forth below -- under either party's construction, the Court, while denying summary judgment as to the invalidity of Claim 26, would grant summary judgment for lack of infringement of that Claim.

After construing the necessary terms in the claims, the Court next considers the validity of the asserted claims.  A properly issued patent is presumed valid, and defendants must present clear and convincing evidence of invalidity to overcome that presumption.  AK Steel Corp. v. Sollac & Ugine, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003).

---

[5] As noted, there are also two terms in Claim 26 for which defendants have proposed undisputed constructions.  Therefore, the Court adopts those undisputed definitions.  Specifically, the Court finds that "casing member having two slots therein" is defined as "the casing member has two slots on a side of the adapter," and "wherein each pin slides within one of the slots" is defined as "each of the pins extending from the mounting ring slides within a separate one of the slots."

Defendants claim that the Claims here in issue are invalid because they were anticipated by prior art.  In order for a patent to be valid, its claims must be "novel." 35 U.S.C. § 102. Therefore a claim is invalid as anticipated if each and every limitation is found either expressly or inherently in prior art. King Pharms., Inc. v. Eon Labs., Inc., 616 F. 3d 1267, 1274 (Fed. Cir. 2010).

Defendants argue that Claim 1 of the '331 patent is anticipated because the prior German '496 patent discloses an adapter with a secondary lens mechanism for "tilting the optical axis of an attached lens at a non-perpendicular angle to the image plane of the camera."[6]  Def. Mem. at 18.  The only dispute between the parties regarding anticipation by the '496 patent is whether the '496 patent discloses a tilt means as disclosed in Claim 1 of the '331 patent.

Although the '496 patent describes a "bearing axis 7," plaintiff argues that the bearing axis 7 is simply a line or point around which the slides pivot.  But, as stated above defendants' expert has testified, without admissible contradiction, that in this context, the word "axis" is "often

---

[6] Plaintiff objects generally to the translation of the '496 patent, but he does not provide his own translation or describe any specific problems with the translation submitted by the defendants.  The defendants' translator certified that he is an official translator in Danish and German, Wyatt Decl. Ex. 3 at 3775, and the Court finds no problem with the translation. Therefore, the Court overrules any objection to the translation.

used by engineers to refer to a structural element, the most

common type being a pin capable of rotating in a hole." Reply

Declaration of Anders Poulsen, Feb. 2, 2012 "Poulsen Reply

Decl." ¶ 8. Defendants' expert has repeatedly explained that an

axis, even though it is not "described" in the '331 patent,

Wyatt Decl. Ex. 8, at 257:23-258:2, is understood by someone

with ordinary skill in the art to be a bearing structure, often

a pin rotating in a hole. Poulsen Reply Decl. ¶ 8; Wyatt Decl.,

Deposition of Anders Poulsen, Jan. 5, 2012 ("Poulsen Dep.") at

197:5-14. The argument of plaintiff's counsel that the axis in

the '496 patent is theoretical is not competent evidence and is

insufficient to withstand summary judgment in the face of

defendants' contrary expert testimony. Therefore, the Court

concludes that the '496 patent discloses the tilt means (either

the pivot mechanism or ball and socket mechanism) found in the

'331 patent. Accordingly, the Court finds that Claim 1 is

invalid as anticipated either expressly or inherently. See

Schering Corp. v. Geneva Pharms, Inc., 339 F.3d 1373, 1377 (Fed.

Cir. 2003) ("A prior art reference may anticipate without

disclosing a feature of the claimed invention if that missing

characteristic is necessarily present, or inherent, in the

single anticipating reference.")

There is no need to examine Claim 6 separately, because

plaintiff acknowledges that Claim 6 depends upon Claim 1 and

makes no further argument about why the Court's determination on Claim 1 would not also govern Claim 6.[7]  See Pl. Mem. at 19.

The defendants also argue that Claim 26 is invalid under 35 U.S.C. § 103, by virtue of its obviousness.  Section 103(a) forbids issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103.  Even if a claim limitation is not disclosed by a particular prior art reference, a patent claim will be invalid for obviousness if a person of ordinary skill can implement a predictable variation of the prior art. KSR Int 'l Co. v. Teleflex Inc., 550 U.S. 398, 417 (2007).

In analyzing obviousness, a court examines the difference between the claimed invention and the prior art to determine whether "the subject matter as a whole would have been obvious at the time the invention was made" to a person having ordinary skill in the art. Alza Corp. v. Mylan Labs., Inc., 464 F.3d 1286, 1289 (Fed. Cir. 2006).  In doing so, courts rely on the "Graham factors," which include 1) the scope and content of the prior art; 2) the level of ordinary skill in the art; 3) the

---

[7] In light of its conclusion above, the Court need not reach defendants' assertions that Claims 1 and 6 are also invalid as obvious.

16

differences between the claimed invention and the prior art; and 4) evidence of secondary factors, also known as objective indicia of nonobviousness. Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966).

Claim 26 of the '331 patent is directed to the use of cam and groove technology to move the attached lens with respect to the camera. According to the defendants, U.S. Patent No. 5,264,963 ("the '963 patent"), titled "VARIFOCAL LENS ASSEMBLY," which was filed on May 22, 1992 and issued on November 23, 1993, discloses those lens-moving elements of claim 26 that are not disclosed in the '496 patent. See Johnson Decl., Ex. J. Defendants argue that a person with ordinary skill in the art would have been motivated to perform the lens tilting disclosed in the '496 patent using the lens-moving elements of the '963 patent.

Although this is a close question, the Court finds that the defendants have not presented clear and convincing evidence that the patent was invalid as obvious, for the following reasons:

First, although the plaintiff provides only attorney argument on this point, it is unclear if the slots in the '963 patent perform a different function in order to achieve a different result from the slots described in the '331 patent. Moreover, even if the '963 patent did disclose the slots in Claim 26, "a patent composed of several elements is not proved

17

obvious merely by demonstrating that each of its elements was, independently, known in the prior art." KSR, 550 U.S. at 418. Here, the defendants have not provided clear and convincing evidence that someone with ordinary skill in the art would be motivated to combine the '496 patent with the '963 patent.  In particular, the secondary considerations referenced by the Supreme Court in *Graham* apply here.  As the Supreme Court held in *Graham*, "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc.," are relevant to the question of obviousness. Id. at 17-18. There is no evidence in the record that any company made an adapter like Eastcott's before he secured the '331 patent. Moreover, although it is true that there is no evidence about the commercial success of the adapter itself, there is evidence that Eastcott's photographs relying on the benefits of the adapter designed in connection with the patent have met with commercial success. Therefore, regardless of the claim construction of Claim 26, the defendants have not provided clear and convincing evidence that a skilled artisan would have combined the elements of the '496 patent for tilting a lens with the '963 patent for using pins and slots to move lens elements to come up with Claim 26.

In sum, the defendants have established at this stage that Claims 1 and 6 are invalid, but not Claim 26.  But plaintiff's

18

suit must still fail if Claim 26 was not infringed.

The Court therefore turns to the question of whether the HTS 1.5 adapter infringes Claim 26 of the '331 patent. Plaintiff concedes that the HTS 1.5 adapter does not literally infringe Claim 26, but he asserts infringement of Claim 26 under the doctrine of equivalents. The basic question under the doctrine of equivalents is "[d]oes the accused product or process contain elements identical or equivalent to each claimed element in the patented invention?" Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997).

> The doctrine of equivalents can be met in one of two ways:
>
> Under the insubstantial differences test, '[a]n element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial.' Alternatively, under the function-way-result test, an element in the accused device is equivalent to a claim limitation if it 'performs substantially the same function in substantially the same way to obtain substantially the same result.'

Voda v. Cordis Corp., 536 F.3d 1311, 1326 (Fed. Cir. 2008)

The Federal Circuit's decision in AquaTex Indus., Inc. v. Techniche Solutions, 479 F.3d 1320 (Fed. Cir. 2007) is controlling and dispositive here. As the Aquatex Court explained, under the doctrine of equivalents:

> a patentee must ... provide particularized testimony and linking argument as to the 'insubstantiality of the differences' between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is

19

> presented to support a finding of infringement under
> the doctrine of equivalents. *Such evidence must be*
> *presented on a limitation-by-limitation basis.*
> Generalized testimony as to the overall similarity
> between the claims and the accused infringer's product
> or process will not suffice.

Id. at 1328 (emphasis in original)(quoting Texas Instruments,

Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1567 (Fed.

Cir. 1996)).  The Federal Circuit explained that this rule also

applies to the summary judgment context.  Id.

Therefore, when the patent holder relies on the doctrine of

equivalents rather than literal infringement, he must meet

additional requirements in order to survive summary judgment.

Specifically:

> the difficulties and complexities of the doctrine [of
> equivalents] require that evidence be presented to the jury
> or other fact-finder through the particularized testimony
> of a person of ordinary skill in the art, typically a
> qualified expert, who (on a limitation-by-limitation basis)
> describes the claim limitations and establishes that those
> skilled in the art would recognize the equivalents.

Id. at 1329.

Moreover, attorney argument cannot suffice to meet the

plaintiff's burden at this stage.  See id.

Here, plaintiff has provided no particularized testimony or

other evidence to explain on a limitation-by-limitation basis

how the HTS 1.5 adapter is equivalent to the adapter disclosed

in the '331 patent.  This is true for several reasons:

First, as noted, Eastcott has proffered no admissible

20

expert testimony on infringement, which will "typically" be required to prove infringement under the doctrine of equivalents.  See id.

Second, even if the stricken portions of Eastcott's affidavit, see supra, were admissible, either as expert testimony or otherwise, the affidavit does not contain the particularized testimony required to prove infringement on a limitation-by-limitation basis.

Third, during his deposition, Eastcott was asked to highlight a diagram of the accused HTS 1.5 device — the same diagram included in plaintiff's preliminary infringement contentions — to identify what features of the adapter corresponded to each limitation of the claims.  Eastcott Dep. at 244:21-245:4.  But, he was unable to do so.  Id. at 245:6-247:5. In fact, he said that he was unable to comprehend the diagram of the adapter.  Id. at 245:25-246:1-2.  He also stated, for example, that he had no opinion about where a mounting ring was found in the HTS 1.5 adapter.  Id. at 246:20-247:5.  Therefore, plaintiff has not even come close to providing the particularized testimony of one skilled in the art to demonstrate the infringement on a limitation by limitation basis.  Accordingly, defendants' motion for summary judgment on the basis of non-infringement of Claim 26 is granted.

The Court has considered plaintiff's additional arguments

21

and finds them without merit.  Therefore, the Court grants the defendants' motion for summary judgment and dismisses the complaint with prejudice.  The Clerk of the Court is directed to close document number 21 on the docket of this case and to enter judgment.

SO ORDERED.

Dated: New York, New York
September 24, 2012

JED S/ RAKOFF, U.S.D.J.