UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D..........  9/26/2012

---------------------------------x

JOHN EASTCOTT,                     :

            Plaintiff,             :

                                   :        11 Civ. 5383 (JSR)

      -v-                          :
                                   :        MEMORANDUM ORDER

                                   :

HASSELBLAD A/S, HASSELBLAD USA INC., :
and B&H PHOTO & ELECTRONICS CORP., :

                                   :

            Defendants.            :

---------------------------------x

JED S. RAKOFF, U.S.D.J.

      Contrary to the apparent view of plaintiff and his counsel,

a legal forum is not the place to play a shell game.

      The opportunity for such shenanigans arose when, during the

course of this patent infringement lawsuit, plaintiff John

Eastcott, a professional photographer, deposed the expert

witnesses of defendants Hasselblad A/S, Hasselblad USA Inc.

(collectively "Hasselblad"), and B&H Photo & Electronics Corp

("B & H").  Pursuant to Federal Rule of Civil Procedure

26(b)(4)(E), defendants subsequently requested reimbursement in

the amount of $13,552.50 for the time their expert witnesses

spent preparing for and attending those depositions.  Eastcott

and his counsel, Douglas C. Wyatt, Esq., ignored the requests

for two months and then raised dubious objections to the

requests that they later withdrew.  But when defendants

threatened further action to obtain payment, Eastcott and his

1

counsel sent defendants an invoice that purported to bill
defendants $17,000 for the depositions of Eastcott and his wife,
also a photographer.  The invoice was such an obvious sham that
defendants, after attempting to resolve the matter directly with
Eastcott, filed a motion seeking (1) to compel Eastcott to pay
$18,770.53 for defendants' expert depositions; (2) to require
Eastcott to reimburse defendants' attorney's fees for the
expenses associated with having to secure this payment through
the Court; and (3) to impose sanctions against Eastcott and his
counsel for "fabricating the charges on the 'invoice.'"
Defendants' Motion for Payment of Expert Fees dated May 11, 2012
("Defs.' Mot.") at 1-2.

After reviewing full briefing and oral argument, the Court
hereby grants defendants' motion, as follows: (i) Eastcott is
ordered to promptly reimburse defendants $18,520.53 for the
depositions of defendants' expert witnesses; (ii) defendants are
not required to pay Eastcott for any of the fees associated with
Eastcott's purported invoice; (iii) sanctions in the amount of
$12,815.20  are imposed on Eastcott and his counsel, jointly and
severally, for creating, submitting, and continuing to rely on
the sham invoice; and (iv) the portion of the sanctions equal to
defendants' attorney fees in securing this relief shall be paid
to them, and the rest to the Clerk of the Court.

The aforementioned relief is warranted by the following findings of fact and conclusions of law: On August 2, 2011, Eastcott brought this patent suit against defendants, alleging that Hasselblad had infringed his patent on a tilt-shift lens adapter and that B & H had marketed the infringing product.[1] In response to interrogatories, Eastcott listed himself and his wife, Yva Momatiuk, as the two persons with factual knowledge of the infringement. Defendants' Reply Brief dated May 23, 2012 ("Defs.' Rep. Br.") at 3. Accordingly, defendants' counsel, Mark Johnson, Esq., contacted Eastcott's counsel, Douglas C. Wyatt, Esq., to arrange depositions. Declaration of Mark C. Johnson in Support of Motion for Payment of Expert Fees dated May 23, 2012 ("Johnson Decl.") ¶ 11.  After Johnson determined by phone that Wyatt's New York City office appeared to be Eastcott's preferred location for his deposition, defendants noticed the deposition of Eastcott for December 20, 2011 at Wyatt's office. Id. ¶ 12.

In pretrial discussions between the parties, Eastcott indicated that he planned to submit an "expert" report on damages. On December 5, 2011, Eastcott served this report, which

---

[1] By separate Memorandum Order issued September 24, 2012, the Court granted defendants' motion for summary judgment, dismissing all of plaintiff's claims with prejudice. The Court, however, retains jurisdiction over the collateral matters that gave rise to this Memorandum Order and over any subsequent proceedings relating thereto.

he had authored himself. On December 15, this Court granted
Eastcott permission to supplement this report by December 16,
which he did. Id. ¶¶ 13-14. On December 17, defendants sent
Eastcott a Second Supplemental Notice of Deposition. Id. The
notice asked Eastcott to bring to his December 20 deposition a
copy of the documents upon which he relied to form the opinions
in the supplemented expert report. Id.; Plaintiff's Response
Brief dated May 17, 2012 ("Pl.'s Resp. Br.") Ex. 5.

During Eastcott's deposition, he asserted that he was
qualified to testify as an expert on patent infringement
damages. Pl.'s Resp. Br. Ex. 6 at 9:8. Although Eastcott
acknowledged that he would have been unqualified to testify as
an expert a year earlier, he alleged that since that time he had
learned about licensing agreements and reasonable royalties.
Defs.' Rep. Br. Ex. J, Deposition of John Eastcott, Dec. 20,
2011 ("Eastcott Dep.") at 25. Still, Eastcott could not identify
any "authoritative literature" on the subject, Pl.'s Resp. Br.
Ex. 7 at 53-54, nor could Eastcott identify any relevant case
law on damages, Eastcott Dep. at 15-19. Moreover, Eastcott did
not bring to the deposition any of the documents requested by
defendants' Second Supplemental Notice. Id. at 30-32.

> JOHNSON: I requested that you be here with paper. Is
> there a reason why you haven't?

WYATT: Objection. Mark, we received this [Second
Supplemental Notice] yesterday . . . . [Y]ou're asking
for a litany of documents -- sorry. This is too late.

JOHNSON: I received the expert report on Friday.
Two days later, I supplemented the notice . . . .

            . . .

WYATT: Mr. Eastcott is not prepared to go through
the documents that you requested yesterday.

Id.

In fact, Eastcott was not prepared to testify at all
regarding how he formed the opinions of his supplemented expert
report.  Rather, as his counsel stated in response to this
Court's later questions about why Eastcott did not answer
questions about the expert report at his December 20th
deposition, "Your Honor, we understood that Mr. Eastcott was
testifying that day as a fact witness."  Transcript of Oral
Argument, Feb. 21, 2012 ("2/21/12 Tr.") at 19.

Defendants also deposed Eastcott's wife, Yva Momatiuk.
Defendants served a subpoena on Momatiuk on December 27, 2011.
Pl.'s Resp. Br. Ex. 9.  Although the subpoena requested an in-
person deposition for Momatiuk, the parties subsequently agreed
that the deposition would be taken by telephone. Johnson Decl.
¶ 17. Nevertheless, Momatiuk traveled to plaintiff's counsel's
office in New York for the deposition. Id.  The deposition
lasted less than one hour. Defs.' Mot. at 2. In response to

5

questions about her knowledge of patent law, Momatiuk stated
that she was not able to provide an expert opinion.  Pl.'s Resp.
Br. Ex. 10, Deposition of Yva Momatiuk, Jan. 10, 2012 ("Momatiuk
Dep.") at 19-22.  She stated that she did not know why she was
identified as a person with knowledge of the alleged
infringement, but stated, "I think because I am married to
John."  Id. at 21-22.

Meanwhile, in January 2012, Eastcott deposed two of
defendants' expert witnesses: Andrew D. Finger and Anders
Poulsen.  Finger subsequently billed defendants $395 per hour
for his 12 hours of preparation, deposition testimony, and
travel to and from New York City. Defs.' Mot. Ex. A. Poulsen
billed defendants $250 per hour plus expenses for 35.25 hours of
preparation, deposition testimony, and travel.  Id.  On January
9, defendants sent Finger's invoice to Eastcott, and on January
29, defendants sent Poulsen's invoice to Eastcott.  The invoices
totaled $13,552.50 because defendants sought reimbursement only
for their experts' time and did not seek reimbursement for
travel costs and expenses.  Id.  On February 6, 2009, Johnson
sent Wyatt a follow-up email stating that Wyatt had not
responded to Finger or Poulsen's invoices, even though Johnson
had sent them, respectively, a month and a week earlier.  Id.

6

Despite that follow-up email and the fact that defendants had identified the Federal Rule of Civil Procedure (Rule 26(b)(4)(E)) under which they sought reimbursement, Eastcott did not respond to the invoices until March 16, 2012. On that day, Eastcott sent two one-page letters to defendants raising various, largely conclusory, objections to defendants' invoices. Defs.' Mot. Ex. B. For example, Eastcott argued that the two hours of preparation time and the travel time invoiced by Finger were "unreasonable and inappropriate." Id. Eastcott also objected on the ground that "the rate charged is not a reasonable rate to be paid by an individual such as Mr. Eastcott." Id. He raised nearly identical objections to Poulsen's bill. Id. On March 22, Johnson responded in detail to Eastcott's objections and again asked for reimbursement, this time adding that defendants would include the experts' travel expenses if Eastcott did not timely comply. Defs.' Mot. Ex. C.; see E.E.O.C. v. Johnson & Higgins, Inc., 93 Civ. 5481, 1999 WL 32909, at *1-3 (S.D.N.Y. Jan. 21, 1999) (authorizing inclusion of travel expenses in Rule 26 reimbursement).

Instead of sending a check or raising further objections, however, Wyatt wrote an email to Johnson on April 19th. The email, in its entirety, stated, "[a]ttached please find Eastcott's invoice for attendance at defendant's depositions."

Defs.' Mot. Ex. D.  Attached to the email was an invoice for $17,000 entitled "[e]xpert witness testimony re: optical adapter for controlling the angle of the plane of focus and its unique application in professional photography." Id.  Eastcott's invoice billed defendants for a "[f]ull day of [Eastcott's] testimony [at] $8,000/day" plus five hours of travel time "billed at half day rate" for a total of $10,500. Id. Eastcott's invoice also billed defendants for a "[h]alf day of [Momatiuk's] testimony" and five hours of travel time for a total of $6,500. Id.  During a May 15, 2012 telephone conference with the Court, Eastcott's counsel stated that he had "provided an invoice that would address defendants' invoices," because his invoice was "commensurate" with defendants'.  On that call, Eastcott's counsel also expressly withdrew his objections to defendants' expert fees, a position he subsequently reconfirmed.

On May 11, defendants filed the instant motion.  Defendants requested an order that (1) compels Eastcott to pay $18,770.53 for the defendants' expert depositions (now including travel time and expenses); (2) requires Eastcott to reimburse defendants' attorney's fees for the cost of having to secure this payment through the Court; and (3) imposes sanctions against Eastcott and his counsel for "fabricating the charges on the 'invoice.'"  Defs.' Mot. at 1-2.

In response, Eastcott argues that he does not need to reimburse defendants for the time of their expert witnesses because his own invoice is "commensurate." But Eastcott's invoice is wholly improper, not to say an outright sham.

Federal Rule of Civil Procedure 26 authorizes a party to "depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). If a party deposes an identified expert, the rule then requires the deposing party "to pay the expert a reasonable fee for time spent in responding to discovery." Fed. R. Civ. P. 26(b)(4)(E).

In determining whether an expert fee request is "reasonable," some federal courts employ an eight-factor test. See E.E.O.C. v. Johnson & Higgins, Inc., 93 Civ. 5481, 1999 WL 32909, at *3 (S.D.N.Y. Jan. 21, 1999) (laying out the eight-factor test). Here, however, no such complicated test is necessary, because in this case, plaintiff and his counsel, after ignoring and then, on the basis of frivolous objections, refusing to pay defendants' reasonable fees, concocted a fraudulent scheme to attempt to evade payment through the fabrication of a false and misleading invoice.

Eastcott's invoice billed defendants $6,500 for Momatiuk's deposition and $10,500 for Eastcott's deposition. Even if this

were a legitimate invoice, which it is not, there would still be
a threshold question of whether the plaintiff can seek
reimbursement for expert deposition costs even though he
concedes that neither purported expert -- Eastcott or Momatiuk -
- billed the plaintiff himself for his or her time.  Rule 26
requires that a deposing party "pay the expert a reasonable fee
for time spent in responding to discovery under Rule 26(b)(4)(A)
or (D)." Fed. R. Civ. P. 26(b)(4)(E). This language does not
specify whether it would be "reasonable" for one party to have
to pay an expert that the other party has retained for free. Id.
The commentary to the rule's 1970 amendments, however, indicates
that the purpose of the rule is to reimburse parties for costs
that they have actually incurred. It states, "[t]hese provisions
for fees and expenses meet the objection that it is unfair to
permit one side to obtain without cost the benefit of an
expert's work *for which the other side has paid*, often a
substantial sum."  Fed. R. Civ. P. 26 cmt. (emphasis added).
Moreover, Wright and Miller summarize the rule, formerly known
as Rule 26(b)(4)(C) as follows:

> One argument against discovery of expert information has
> been that it is unfair to let one party have *for free what
> the other party has paid for*. But that unfairness can be
> remedied, in an appropriate case, by requiring the party
> seeking discovery to share the cost. This attitude is
> embodied in Rule 26(b)(4)(C), which seeks a fair allocation
> of expert expenses between the retaining party and the one
> seeking discovery.

8A Charles Alan Wright, et al., Federal Practice & Procedure
§ 2034 (3d ed.) (emphasis added).  Therefore, the Court finds
that the plaintiff cannot seek reimbursement under this rule for
costs that he did not incur.

Even assuming arguendo, however, that the rule permitted a
party to seek reimbursement for costs that it had not incurred
based on the value of its experts' time,[2] the plaintiff's invoice
is so clearly improper that it amounts to a fraud.

The motive for the fabrication is not hard to find.  After
months of ignoring and refusing to reimburse defendants for
their legitimate expert expenses, Eastcott and his counsel came
up with an illicit strategy: to fabricate an invoice that would
cancel out defendants' legitimate invoices.  But, motive aside,
plaintiff's invoice bears no relation to reality:

To begin with, Eastcott charged defendants for five hours
of travel time at $500 per hour. Pl.'s Resp. Br. Ex. 4. While
travel time is compensable under Rule 26, see E.E.O.C., 1999 WL
32909, at *3, compensation for travel time is not appropriate
when a party's expert witness merely had to travel to the

---

[2] This argument has limited persuasive force when the expert is
also a party, but it lacks any persuasive force when the expert
is not a party (as in the case of Momatiuk).  Otherwise, a party
could receive windfall payments for time that he neither spent
nor paid for. Even if Momatiuk were an expert, she is not a
party, and the plaintiff did not pay her for her time.

party's counsel's offices, especially when the party elected for the deposition to take place there. See, e.g., Fleming v. United States, 205 F.R.D. 188, 189 (W.D. Va. 2000); McBrian, Inc. v. Liebert Corp., 173 F.R.D. 491, 493 (N.D. Ill. 1997).  Moreover, since Eastcott concedes that he was being deposed that day at least partially as a fact witness, see 2/21/12 Tr. at 19-20, Eastcott would have traveled to the same location even if he had not held himself out as an expert witness.  Therefore, the five hours of travel time are not compensable.

Second, plaintiff admits that Eastcott's deposition did not last eight hours, and thus there is no reason to bill for a "full day of testimony."  Although defendants' experts plainly billed by the hour, as is appropriate, plaintiff and his counsel appear to argue that time can only be divided into half-day and full-day increments.  Lawyers are used to billing their clients in six minute increments, and it is improper for plaintiff's counsel to bill for a full-day of testimony when the deposition did not last for eight hours.

Third, Eastcott's fee of $1,000 per hour is wholly unreasonable.  Ironically, Eastcott initially objected to the charged rates of defendants' experts, even though those expert witnesses billed at $250 and $395 per hour.  Eastcott asserts that he based his $1,000 per hour rate on a letter from National

12

Geographic stating that it pays $3,000 – $13,000 per day to
commercial photographers when those photographers are on a
photography shoot. See Transcript of Oral Argument, May 30, 2012
("5/30/12 Tr.") at 8-10. But even if the Court were to accept
this letter, this is evidence only of what Eastcott could bill
when he was selected for a commercial photography shoot, and it
has no bearing on what he could charge for his purported expert
opinion on patent-infringement damages.[3]

Moreover, based on his deposition testimony and his lack of
expertise on damages, it is clear that Eastcott could not
reasonably bill $1,000 per hour for his purported expertise on
damages. It is unimaginable that a party would hire, at $1,000
per hour, an expert who was not qualified to calculate damages
in 2010, who had received no formal training in calculating
damages since that time, who could not provide specific answers

_____

[3] Indeed, even if the plaintiff could seek reimbursement for the
value of his time as an expert witness, and even if Eastcott
could bill defendants for a full day of deposition testimony, if
one looks at Eastcott's average daily salary to calculate his
opportunity cost he would be entitled to at most several hundred
dollars in reimbursement. Eastcott's federal tax return
reported $79,679.91 in income in 2010, which averages to around
$1500 per week. See Def. Ex. K. at 24. Even if the Court were to
credit Eastcott's unsubstantiated claim that the entity
controlled by him and his wife made $290,000 in 2010, see id.,
that still averages to a little more than a $1,000 per work day
for the work of two photographers.

to questions about damages, and who did not propose to discuss the documents upon which he based his expert report.

Fourth, the $6,500 billed for Momatiuk is even more plainly an utter fraud.  Neither party "identified" Momatiuk as an expert.  In his letter brief, Eastcott now argues that Momatiuk was providing him "with expert assistance in anticipation of litigation."  Pl. Resp. Br. at 3.  It is unclear what such "expert assistance" means, but it is clear that Momatiuk was not an expert. Eastcott states that defendants "qualified Momatiuk as an expert," Pl. Resp. at 2, but the portion of the transcript that he cites for that proposition directly undermines that assertion, see Momatiuk Dep. at 6.  Defendants' counsel simply asked Momatiuk whether she was a photographer and how long she had been a photographer.  See id. There is no basis in Rule 26 for Eastcott's requested reimbursement for Momatiuk's testimony.

Moreover, even if Momatiuk had been an expert, Eastcott's purported invoice would still be unreasonable. Eastcott's purported invoice bills defendants for five hours of travel time at $500 per hour and a "[h]alf day of testimony" at $1,000 per hour, Pl.'s Resp. Br. Ex. 4, even though defendants deposed Momatiuk by telephone for less than an hour, Defs.' Mot. at 2. The fact that Eastcott essentially rounded up Momatiuk's deposition time from less than one hour to four hours is further

14

evidence that Eastcott ensured that the invoice would be "commensurate" with defendants' invoices, so that, if his ruse had succeeded, he would be relieved of his obligation to pay defendants' expert costs.  There can be no doubt that this is unreasonable, not to say a fraud, a sham, and a travesty.

The Court therefore concludes that Eastcott's request for compensation for his and his wife's testimony is unreasonable and cannot be approved.  Eastcott has dropped his challenges to the reasonableness of fees for defendants' expert witnesses.[4] Accordingly, Eastcott must promptly reimburse defendants for their experts' fees and costs in the sum of $18,520.53.

Having granted defendants' motion for reimbursement, the Court must next consider whether to impose attorney's fees and sanctions on plaintiff and/or his counsel for their conduct in regards to these expert fees.  Defendants seek attorney's fees and sanctions under Federal Rule of Civil Procedure 37.  Defs.' Reply Br. at 3.  On its face, however, that rule does not apply to motions for reimbursement of experts' fees.  The rule states that if a motion to compel disclosure or discovery is granted,

---

[4] The Court notes that plaintiff has repeatedly sought to change his position as to whether he was challenging defendants' invoices.  Although Eastcott twice informed the Court that he was not challenging those invoices, nonetheless, in an abundance of caution, the Court finds that defendants' invoices are, in any event, proper and reasonable.

the court can award the movant reasonable expenses. Fed. R. Civ. P. 37(a)(5)(A). The instant motion is not a motion to compel disclosure or discovery. In case there were any lingering doubts, Rule 37(a)(3) specifies the particular discovery rules that it applies to, and lists Rules 26(a), 30, 31, 33 and 34. Fed. R. Civ. P. 37(a)(3). It does not include any mention of Rule 26(b)(4)(E), which makes sense because a motion brought under that rule is not a motion to compel disclosure or discovery. Therefore, sanctions and attorney's fees are not available under Rule 37.[5]

This does not end the inquiry, however. The Court has a "'well-acknowledged' inherent power . . . to levy sanctions in response to abusive litigation practices." Roadway Express Inc. v. Piper, 447 U.S. 752, 765 (1980) (quoting Link v. Wabash R. Co., 370 U.S. 626 (1962)). A court may impose attorneys' fees and other sanctions against both a party and his counsel who have litigated in bath faith, because "the power of a court over members of its bar is at least as great as its authority over litigants. Id. at 766. After determining that sanctions are not available under Rule 37, it is appropriate for this Court to examine whether sanctions are available under its inherent

---

[5] Moreover, Rule 11 does not allow for discovery sanctions. See Fed R. Civ. P. 11(d) ("This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.").

16

powers.  DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124,
135-36 (2d Cir. 1998).  In order to impose sanctions pursuant to
its inherent powers, this Court must conclude that the conduct
in question was "without a colorable basis" and undertaken in
bad faith, i.e., "motivated by improper purposes such as
harassment or delay." Schlaifer Nance & Co., Inc. v. Estate of
Andy Warhol, 194 F.3d 323, 336 (2d Cir. 1999).

Here, the Court concludes that the conduct in question --
specifically the plaintiff's and his counsel's submission of the
phony invoice and their continued reliance on that invoice --
was without a colorable basis and was undertaken in bad faith.
Therefore, sanctions are warranted.

When Eastcott and his counsel received defendants'
invoices, they first ignored them for two months.  Next, without
any justifiable basis, they tried and failed to get defendants
to reduce the amount of reimbursement they were seeking.  When
that did not work, they turned to a different and fraudulent
strategy.  They sent defendants a purported invoice that had no
legitimate basis, and was simply a ruse intended to cancel out
defendants' invoices.[6]

---

[6] Defendants' original invoices totaled $13,500, but defendants
had warned Eastcott that it would include travel costs and
expenses of around $4,000 if Eastcott continued to refuse to
reimburse defendants.   Defs' Mot. Ex. A; Defs' Mot. Ex. C.

17

Indeed, nearly every part of the invoice serves as further proof that it lacked any colorable basis and was prepared and submitted in bad faith.  Eastcott and his counsel billed for a full day's testimony for Eastcott even though he testified for less than a full day and at least part of his testimony that day was as a fact witness. They billed for a half a day for Eastcott's wife, even though she was deposed for less than an hour and was clearly not an expert.  They billed at a rate of $1,000 per hour for Eastcott and his wife, without any basis to bill at that rate as an expert.  Eastcott had previously objected that the rates of defendants' two experts were too high.  But the rates that Eastcott and his counsel billed for Eastcott's time and that of his wife were two to three times the rates charged by defendants' experts.  Eastcott and his counsel also billed for a half day of travel for Eastcott, even though he conceded that he was already testifying that day as a fact witness (and despite the fact that the deposition took place at his counsel's office).  Eastcott and his counsel billed for a half day of travel for Eastcott's wife, even though she was deposed via telephone at her counsel's office, where she had chosen to be deposed.

For all of these reasons, it is clear that Eastcott and his counsel prepared and sent the invoice to defendants in bad

18

faith, and that Eastcott's and his counsel's continued reliance on this invoice in these proceedings was a fraudulent attempt to avoid paying defendants for their fees.

Since there was no colorable basis for Eastcott and his counsel to seek $17,000 in payments from defendants, and since both Eastcott and his counsel submitted and relied on the invoice in bad faith, the Court imposes sanctions, jointly and severally against both Eastcott and his counsel.  In this regard, defendants incurred reasonable attorney's fees and costs of $6,407.85 in bringing this motion.[7]  Pursuant to its inherent power, the Court imposes sanctions on Eastcott and his counsel in the sum of double that amount, i.e., $12,815.70, one half of which is to be paid to defendants and one half to the Clerk of the Court.

In sum, Eastcott is hereby ordered to pay defendants $18,520.53 in reimbursement of defendants' expert fees and costs,[8] such payment to take the form of a certified check made payable to Mark C. Johnson, Esq., and to be delivered to Mr.

---

[7] Johnson spent 16 hours on this dispute at a rate of $315 per hour, and his plane trip to the hearing on this dispute cost $1,131.60.

[8] Defendants offered to credit Eastcott an hour of Poulsen's deposition time.  Defs.' Reply Br. at 3 n.5.  Therefore, the Court has reduced defendants' bill by $250.  The Court approves this reduction and notes that if Eastcott were entitled to any compensation for his deposition, he would likely be entitled to approximately $250.  See supra note 2.

19

Johnson's office by no later than October 15, 2012.

Additionally, Eastcott and his counsel, Douglas, C. Wyatt, Esq.,

are hereby ordered to pay, jointly and severally, sanctions in

the amount of $12,815.20, of which half (*i.e.*, $6,407.85) is to

be paid to defendants, in the form of a certified check made

payable to Mark C. Johnson, Esq., to be delivered to Mr.

Johnson's office by no later than October 15, 2012, and the

other half (*i.e.*, $6,407.85) is to be paid to the Court, in the

form of a certified check made payable to the Clerk of the

Court, S.D.N.Y., to be delivered to the Clerk's Office by no

later than October 15, 2012.  The Court will retain jurisdiction

to enforce this order, and plaintiff and his counsel are warned

that any failure to timely comply with this order may result in

further sanctions.

    SO ORDERED.

Dated: New York, New York      _____

September 25, 2012         JED S. RAKOFF, U.S.D.J.